## DISTRICT COURT FOR THE CITY AND COUNTY OF DENVER

Civil Action No **18 CV 651** 25

FILED IN DENVER
DISTRICT COURT
DENVER, COLORADO

18 DEC 24  AM 11: 26

DATE FILED: December 24, 2018
CASE NUMBER: 2018CV651

Plaintiff,

Malon Dean Tygrett

v.



CITY AND COUNTY OF DENVER, CITY AND COUNTY OF DENVER ACTING BY AND
THROUGH BOARD OF WATER COMMISSIONERS OF THE CITY AND COUNTY OF
DENVER, ALSO KNOWN AS DENVER WATER AND THE MAYOR OF DENVER,

Defendant.

---

### PLAINTIFF'S COMPLAINT *with Jury*

---

Plaintiff files this Complaint and alleges, as follows:

### I. NATURE OF THE CASE

1. Plaintiff's employment discrimination, civil rights and retaliation action is brought against the

Defendants for equitable and remedial relief and compensatory damages to redress Defendants'

deprivation of his employment-related civil rights secured to him by the **Age Discrimination in**

**Employment Act of 1967. (ADEA),** the Americans With Disability Act, 42 U.S.C. 12101 as

amended by the ADA Amendments Act of 2008 (ADAAA), the Rehabilitation Act of 1973, 29

U.S.C. §701, *et. seq.*, the **First Amendment of the U.S. Constitution,** and Colorado public policy and

common law which prohibits Workers' Compensation retaliation.

2. The actions occurred while Plaintiff was employed by the Defendants because Plaintiff had

complained about safety issues, including but not limited to lack of safe access to the facility's

parking lot, because he was injured on the job, and because of his age and disability. Younger

employees who committed activities the same as or similar to those inaccurately and/or falsely

alleged against Plaintiff were not terminated from employment.

1/2
18CV651-01  esk

2/2
18CV651-02  ESK

3. He seeks awards of back pay, front pay, compensatory damages, attorneys fees, costs of this action and/or reinstatement and other equitable or remedial relief.

## II. JURISDICTION AND VENUE

4. This Court has subject matter jurisdiction over federal claims under 28 U.S.C. §§1331 and 1343, and this action is authorized and instituted pursuant to 29 U.S.C. §§ 621 and 626(c) because they arise under the laws of the United States and said claims are brought to recover damages and to secure other relief for the deprivation of Plaintiff's civil rights.

5. Venue is proper in this judicial District under 28 U.S.C. ' 1391(b),(c) and because the employment practices or omissions alleged to be unlawful were committed within the jurisdiction of the United States District Court for the District of Colorado.

## III. PARTIES

6. Plaintiff Malon Dean Tygrett (hereinafter Mr. Tygrett or Plaintiff) is a citizen of the U.S. and at all relevant times a Colorado resident. He is a former employee of Defendant Denver Water.

7. At all relevant times, Plaintiff was an employee of Defendant within the meaning of federal and Colorado statutes.

8. Defendant Denver Water is a municipal water utility physically located in Denver, Colorado and the City and County of Denver is a governmental entity also located in Denver Colorado and therefore, they are subject to the personal jurisdiction of this Court. Based upon information provided by Defendants, Denver Water employs approximately 1100 employees.

9. Denver Water is also part of the City and County of Denver.

10. Defendant Denver Water terminated Plaintiff's employment effective August 22, 2017. At all relevant times during Plaintiff's employment, Defendant employed several

hundred employees, and therefore is subject to the provisions of the ADEA, ADAAA, the U.S. Constitution, and other relevant federal and state of Colorado statutes, and to the jurisdiction of this Court thereunder.

## IV. EXHAUSTION OF ADMINISTRATIVE REMEDIES

11. All prerequisites or conditions precedent to the institution of this suit have been met. Plaintiff timely filed a charge of discrimination with the United States Equal Employment Opportunity Commission (EEOC) bearing charge #541-2017-02158. A copy of the Charge is attached hereto as Ex. A. On September 25, 2018 EEOC issued a Notice of Right to Sue in regard thereto. This action is timely filed within ninety (90) days of plaintiff's receipt of said notice of right to sue.

12. On January 29, 2018 and again on June 27, 2018 plaintiff timely served Notices of Intent to Sue pursuant to C.R.S. §24-20-109. See Exhibits B and C, respectively, attached hereto and incorporated herein by reference as if more fully set forth herein.

## V. FACTUAL ALLEGATIONS

12. Plaintiff was a long term employee of Defendant Denver Water having worked for Denver Water for more than twenty years. At the time of his termination Plaintiff worked as a Senior Equipment Operator in Defendant's Operations and Maintenance Division (hereinafter "O&M").

13. Defendant Denver Water has shown a pattern of targeting and terminating employees who are over 40 and disabled.

14. Plaintiff was initially injured on March 4, 2015 at the age of 53 when he slipped on ice at work getting into a loader. He injured his back. hip, neck, head and sciatic nerve.. He filed a workers' compensation claim.

15. Prior to that injury Plaintiff did not have any issues with his employer, Denver Water.

16. Shortly thereafter another driver allegedly complained that Plaintiff had tailgated her vehicle. Plaintiff received a what was essentially a verbal warning, though Denver Water did not investigate the allegation leading to the warning. Plaintiff's supervisor, Jack Tolmich did not want to hear from witnesses who substantiated Plaintiff's description of the incident.

17. Construction began at Defendant's Denver Water's campus which greatly reduced the size of parking lots and other areas making it more difficult and unsafe for all drivers and vehicles (including, without limitation, the public and contractors) to drive through the campus. This was particularly for large vehicles like semi-tractors and trailers; Plaintiff drove a semi truck with a long trailer.

18. Ongoing construction changes occurred frequently in the ever-shifting parking and driving areas which aggravated the difficulties and dangers of the construction to all vehicles traversing the area.

19. Plaintiff complained about the dangerous conditions affecting vehicle traffic to Denver Water management, including Jack Tomlich, Tom Roode and Mark Cripps who ignored his complaints and suggestions for improvements. They did nothing to alleviate the problems.

20. Plaintiff's complaints

20. Despite Plaintiff's requests, Denver Water refused to put up signage, including "no parking signs", and did not create truck lanes for drivers. This created problems for Plaintiff since he maneuvered large semi-trucks and trailers on a regular basis through Denver Water's campus.

21. As a result of an unfounded complaint by a fellow employee about an incident in which Plaintiff requested a woman to move her vehicle so he could drive his truck through the lot, a Human Resources employee began interviewing Denver Water employees to determine whether Plaintiff created a hostile environment, although there were no allegations that he had done so.

22. The Human Resources employee interviewed several Denver water employees though not about any specific incident. The Human Resources employee admitted that she typically did not question employees about other employees.

23. The Human Resources employee did not have the education or experience to conduct the investigation. The investigation did not support the Human Resources employee's allegation that Plaintiff had created a "hostile environment" and did not reflect that Plaintiff had violated any anti-discrimination law.

24. Plaintiff continued to report safety hazards to management but his performance reviews that year reflected that he was to mind his own business. Denver Water's policies provided for the protection of employees who reported safety hazards, But Plaintiff was related unsigned instead.

31.     As a result of the termination, Plaintiff has been unable to obtain other employment.

## FIRST CLAIM FOR RELIEF: DISABILITY DISCRIMINATION , THE AMERICANS WITH DISABILITY ACT  42 U.S.C. §§ 12101, et.seq. THE REHABILITATION ACT 29 U.S.C. §§ 791 AND 794

39. Plaintiff incorporates by reference all preceding paragraphs as though fully set forth herein. Plaintiff also incorporates the factual allegations contained in Exhibits A, B, and C.

40. As demonstrated by his long term and successful performance with Defendant Denver Water, Plaintiff was qualified for his position.

41. Plaintiff was initially injured on March 4, 2015. .

42. Plaintiff was injured again on August 1, 2017 and placed on restricted duty. He was terminated from employment on August 22, 2017.

41. Plaintiff has a disability as defined by law and he was qualified for his position.

42. Defendant Denver Water subjected Plaintiff to false allegations, abuse, harassment, and discrimination after his injury.

43. Defendants falsely alleged that Plaintiff had been rude to a contractor and had unsafely operated a vehicle in Denver Water's parking lot. Denver Water terminated him from employment allegedly based on accusations it knew were false, and which were a pretext to terminate defendant because of his disability.

44. Defendants could have accommodated Plaintiff's disability without undue hardship.

45. Defendants did not terminate non-disabled employees who had engaged in the same or substantially similar behavior as that alleged against Plaintiff.

46

47. Defendants discriminated against Plaintiff by terminating his employment because he was disabled, by refusing to accommodate him, and failing to engage in the interactive process by terminating Plaintiff without discussion of possible accommodation.

48. Defendants' actions were in violation of the Americans with Disabilities Act, 42 U.S.C. §§ 12101, *et. seq.* and the Rehabilitation Act , 29 U.S.C. §§ 791 and 794.

49. Plaintiff has been injured as a result of Defendants' actions or lack thereof.

### SECOND CLAIM FOR RELIEF : AGE DISCRIMINATION
**Unlawful Intentional Age Discrimination in Violation of the ADEA, 29 U.S.C. §621 et. seq.**

50.  Plaintiff incorporates by reference all preceding paragraphs as though fully set forth herein. Plaintiff also incorporates the factual allegations contained in Exhibits A, B, and C.

Plaintiff incorporates by reference all preceding paragraphs as though fully set forth herein. Plaintiff also incorporates the factual allegations contained in Exhibits A, B, and C.

51. The ADEA makes it unlawful for employers and their agents "to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age. 29 U.S.C. §623(a)(1).

52. Plaintiff was born on October 18, 1961 and was over the age of 50 at the time he was unlawfully terminated by Defendants.

53. Plaintiff was qualified for his position with Defendant Denver Water.

54. Defendants' reasons for terminating Plaintiff from employment were pretextual and untrue.

55. Defendants knew or had reason to know that the reasons for termination were untrue.

56. Defendants did not conduct a reasonable investigation of the allegations although they do conduct a more extensive investigation of employees who are younger than Plaintiff.

57. Defendants falsely alleged that Plaintiff had been rude to a contractor and had unsafely operated a vehicle in Denver Water's parking lot. Defendants terminated him from employment

allegedly based on accusations it knew were false, and which were a pretext to terminate Plaintiff because of his age.

58. . Defendants did not terminate younger employees who had engaged in the same, substantially similar or even more serious behavior as that alleged against Plaintiff.

59. . The Defendants' violations of the ADEA were intentional and willful.

60. As a direct and proximate result of the foregoing violations of the ADEA, Plaintiff has sustained economic and non-economic damages, including but not limited to, loss of wages and other benefits, lost interest on those wages and benefits, and loss of retirement benefits.


### THIRD CLAIM FOR RELIEF
Workers' Compensation Retaliation in Violation of Public Policy and Common Law

61. Plaintiff incorporates by reference all preceding paragraphs as though fully set forth herein. Plaintiff also incorporates the factual allegations contained in Exhibits A, B, and C. 62. Plaintiff had a right to enter into a contract for employment with Defendants with the reasonable expectation that Defendants would treat him lawfully, fairly, in good faith, honestly, and without retaliation for in compliance with all requirements of law, specifically Plaintiff's right to file and pursue a Workers' Compensation claim, pursuant to the Colorado Workers' Compensation Act in accordance with the holding in *Lathrop v. Entenmann's Inc.*, 770 P.2d 1367 (Colo. App. 1989).

63. Defendants' engaged in workers' compensation retaliation against Plaintiff contrary thereto because of his occupational injury by willfully and pretextually terminating his employment.

64. As a direct and foreseeable result of Defendants' acts and omissions described herein, Plaintiff has suffered or incurred, or may be reasonably expected to suffer or incur the following damages

and other losses, including but not limited to economic losses, including ongoing lost income or employment compensation and fringe benefits, including retirement benefits, thereby justifying appropriate awards to Plaintiff of front pay and back pay; damage to reputation and character, credit or credit worthiness, emotional or mental anguish, distress, upset, humiliation, embarrassment or degradation and pain and suffering and such other damages and losses as may be proven at trial.

### Fourth CLAIM FOR RELIEF
(Freedom of Speech—First Amendment)

65. Plaintiff incorporates by reference all preceding paragraphs as though fully set forth herein. Plaintiff also incorporates the factual allegations contained in Exhibits A, B, and C. 66. Plaintiff frequently complained about and pointed out the existing hazards and unsafe driving conditions at Denver Water's campus. These conditions affected all vehicles traversing the campus and were not limited to Plaintiff's vehicle.

67. Plaintiff had concerns that the construction at the Denver Water campus had created congestion and safety hazards for traffic. He suggested some remedies such as increased signage and specific traffic lanes. He addressed his concerns and suggested remedies to Denver Water management, including Jack Tomlich, Tom Roode and Mark Cripps. They ignored his concerns and did nothing to alleviate the problems.

68. Defendants were angry and irritated that Plaintiff continued to raise concerns about the hazards and unsafe driving conditions created at Denver Water's campus.

69. As a result of Plaintiff's reports of unsafe and hazardous driving conditions Defendants instituted disciplinary action and terminated Plaintiff from employment, alleging that he had unsafely parked his semi-tractor and trailer on the premises. These allegations were untrue. In fact, Plaintiff' had an excellent driving record. .

70. Defendants' true purpose for initiating discipline was to retaliate against Plaintiff because of his observations and remarks about the safety hazards faced by all drivers on the Denver Water campus.

71.Plaintiff's speech addressed matters of public concern—that construction created ongoing safety hazards to vehicles traversing the Denver Water campus and that management could mitigate those hazards by implementing appropriate safeguards.

72.Plaintiff's interest in participating in the speech or expression outweighed the Defendants' interest in promoting the efficiency of the public service it provides.

72 Plaintiff's protected speech was a substantial or motivating factor in the decision to discharge plaintiff.

73. . Defendants' Tom Roode and Jack Tomlich retaliated against or were motivated to discharge Plaintiff because of his speech despite the fact that such First Amendment protection was well established. Their actions violate the Free Speech Clause of the First Amendment.

72. As a direct and proximate result of Defendants' violation of the Free Speech Clause of the First Amendment, Plaintiff has suffered irreparable harm, including the loss of employment, loss of salary and benefits, pain and suffering and stigmatization. D

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment in his favor:

   (a) Awarding back and front pay;

   (b) Awarding lost employment benefits, health and retirement benefits, and other
    compensation lost to him as a result of his termination;

(c) Liquidated damages doubling the award of interest, wages, lost employment and retirement benefits, and other compensation lost to him as a result as a result of Defendants' discriminating against him on the basis of his age;

(d) Reinstatement to his position or in the alternative, pay for his job beginning on the date of his termination and extending for a reasonable period into the future;

(d) Awarding compensatory and consequential damages as allowed;

(e) awarding punitive damages as allowed for violations of the First Amendment.

(f) Awarding injunctive or declaratory relief;

(g) Awarding the costs of this action, together with reasonable attorney's fees, expert witness fees;

(h)     Awarding prejudgment and post judgment interest as provided for by law; and

(f)     Granting such other or further relief as the Court deems necessary or appropriate, including Plaintiff's reinstatement with a "no retaliation" order in effect.

**PLAINTIFF DEMANDS A JURY TRIAL ON ALL ISSUES SO TRIABLE**

This 24 day of December, 2018

Respectfully submitted,

11

Plaintiff, pro se

_Malon Dean Tygrett_

_1795 S Sheridan Blvd_

_Lakewood Colorado 80232_

_720-276-9315_



DISTRICT COURT
CITY & COUNTY OF DENVER, COLORADO
1437 Bannock Street
Denver, Colorado 80202

DATE FILED: January 4, 2019 2:42 PM
CASE NUMBER: 2018CV651

Plaintiffs: MALON TYGRETT

v.

Defendant: C AND C OF DENVER ET AL.

▲   COURT USE ONLY   ▲

Case Number: **2018CV651**

Courtroom:  **215**

### DELAY REDUCTION ORDER

All civil courtrooms are on a delay reduction docket.

**IF AN ATTORNEY OR PRO SE PARTY FAILS TO COMPLY WITH THIS ORDER, THE COURT MAY DISMISS THE CASE WITHOUT PREJUDICE.  THIS ORDER IS THE INITIAL NOTICE REQUIRED BY C.R.C.P 121 § 1-10, AND C.R.C.P. 41(B)(2).**

A.  In all civil actions, the following deadlines must be met:

1.  **Service of Process:**  Proof of service of process under C.R.C.P. 4 for all defendants must be filed within **63 days** after the date of filing of the complaint. After **63 days**, the action may be dismissed by the Court against any defendant for whom proof of service has not been filed.

2.  **Default:**  Application for entry of default under C.R.C.P. 55(a) must be filed within **14 days** after default has occurred.

    If all defendants are in default, a motion for entry of default judgment under C.R.C.P. 55(b) must be filed with the application for entry of default. Motions for entry of default judgment must comply with C.R.C.P. 121 § 1-14. Reasonable inquiry regarding a person's military status requires confirmation through the Department of Defense's Service members Civil Relief Act website (https://scra.dmdc.osd.mil) or equivalent confirmation.

3.  **Trial Setting:**  The Responsible Attorney as defined in C.R.C.P. 16(b)(2) must file and serve a Notice to Set the case for trial and must complete the setting of the trial no later than **14 days** from the date the case is at issue. (Note: this is a shorter timeframe than would otherwise be required by C.R.C.P. 16.1(g) of **42 days**.)  A case is "at issue" when:  (a) all parties have been served and have filed all pleadings permitted by C.R.C.P. 7; or (b) defaults or dismissal have been entered against all non-appearing parties; or (c) at such other time as the Court directs.

4.  Cases filed under **C.R.C.P. 16:**

1

a) **Case Management Conference:**  The notice to set trial must also include a notice to set a Case Management Conference as required by C.R.C.P. 16(d)(1), to be held no later than **49 days** after the case is at issue.

b) **Proposed Case Management Order:**  At least **7 days** before the Case Management Conference, the parties must file, in editable format, a proposed Case Management Order consisting of the matters set forth in C.R.C.P. 16(b)(1)-(17) and take all necessary actions to comply with those subsections.

c) **Waiver of Case Management Conference:**  If all parties are represented by counsel, a joint request to waive the case management conference may be included in the proposed Case Management Order, but unless such a request has been granted, counsel and any unrepresented parties should plan on appearing for the case management conference.

5.   Cases filed under **C.R.C.P. 16.1:**

a) **Certificate of Compliance:**  Not later than **49 days** after the case is at issue, the Plaintiff (or the Responsible Attorney) must file a Certificate of Compliance as required under C.R.C.P. 16.1(h).  No Case Management Order or Case Management Conference is required.

B:   Additionally, in all civil actions, the following provisions apply:
**Service of this Order:**  The Plaintiff or Responsible Attorney must send a copy of this order to all other parties who enter an appearance.

**Related Cases:**  An attorney entering an appearance in this case who is aware of a related case is ordered to complete and file in this case an Information Regarding Related Case(s) form available in Room 256 of the City and County Building or at:

https://www.courts.state.co.us/userfiles/file/Information_Regarding_Related_Cases_Form(1).doc

Date: January 4, 2019

BY THE COURT:

District Court Judge
Denver District Court

DENVER DISTRICT COURT
STATE OF COLORADO
1437 Bannock St., Ste 256 Denver, CO 80202

**Plaintiff:** Malon Dean Tygrett,
**v.**
**Defendant:**  City and County of Denver, City and
County of Denver acting by and Through Board of
Water Commissioners of The City and County of
Denver, Also Known as Denver Water and The
Mayor of Denver,

Richard K. Blundell, #10358
Robin Cochran, 12665
3535 West 12th Street, Suite D
Greeley, CO 80634
Phone Number:    (970) 356-8900
Fax Number:       (970) 353-9977
Email:          rick@rkblaw.net

DATE FILED: February 22, 2019 3:59 PM
FILING ID: B23191DC1B29B
CASE NUMBER: 2018CV651

▲ **COURT USE ONLY** ▲

Case Number:  2018CV651
Division:  215

## ENTRY OF APPEARANCE

You are hereby notified that the undersigned attorneys are entering their appearance on
behalf of Plaintiff in the above-captioned matter.

This 22nd day of February, 2019

Respectfully submitted,

/s/Richard K. Blundell, #10358
Robin Cochran. #12665
Attorneys for Plaintiff
3535 West 12th Street, Suite D
Greeley, Colorado 80634
Tel: (970) 356-8900
Fax: (970) 353-9977
Robincochranlaw@aol.com
rick@rkblaw.net
Attorneys for Plaintiff

DENVER DISTRICT COURT
STATE OF COLORADO
1437 Bannock St., Ste 256 Denver, CO 80202

DATE FILED: February 25, 2019 5:20 PM
FILING ID: C9CE47EB51754
CASE NUMBER: 2018CV651

**Plaintiff:** Malon Dean Tygrett,

**v.**

**Defendant:**  City and County of Denver, City and County of Denver acting by and through the Board of Water Commissioners of the City and County of Denver, also known as Denver Water and the Mayor of Denver, Michael Hancock, in his official capacity

▲ **COURT USE ONLY** ▲

Richard K. Blundell, #10358
Robin Cochran, 12665
3535 West 12th Street, Suite D
Greeley, CO 80634
Phone Number:   (970) 356-8900
Fax Number:   (970) 353-9977
Email:   rick@rkblaw.net
Atty Reg. No.:   10358

Case Number: 2018CV651

Division:  215

**DISTRICT COURT CIVIL (CV) CASE COVER SHEET FOR INITIAL PLEADING OF COMPLAINT, COUNTERCLAIM, CROSS-CLAIM OR THIRD PARTY COMPLAINT**

1.      This cover sheet shall be filed with the initial pleading of a complaint, counterclaim, cross-claim or third party complaint in every district court civil (CV) case. It shall not be filed in Domestic Relations (DR), Probate (PR), Water (CW), Juvenile (JA, JR, JD, JV), or Mental Health (MH) cases. Failure to file this cover sheet is not a jurisdictional defect in the pleading but may result in a clerk's show cause order requiring its filing.

2.      ☐      Simplified Procedure under C.R.C.P. 16.1 **applies** to this case **unless** (check one box below if this party asserts that C.R.C.P. 16.1 **does not** apply):

☐    This is a class action, forcible entry and detainer, Rule 106, Rule 120, or other similar expedited proceeding, **or**

■    This party is seeking a monetary judgment against another party for more than $100,000.00, including any penalties or punitive damages, but excluding attorney fees, interest and costs, as supported by the following certification:

■    By my signature below and in compliance with C.R.C.P. 11, based upon information reasonably available to me at this time, I certify that the value of this party's claims against one of the other parties is reasonably believed to exceed $100,000."

Or

☐    Another party has previously filed a cover sheet stating that C.R.C.P. 16.1 does not apply to this case.

3.  ■    This party makes a **Jury Demand** at this time and pays the requisite fee. See C.R.C.P. 38. (Checking this box is optional.)

/s/Richard K. Blundell

Richard K. Blundell, Reg. No. 10358

ATTORNEYS FOR PLAINTIFF

**NOTICE**

This cover sheet must be served on all other parties along with the initial pleading of a complaint, counterclaim, cross-claim, or third party complaint.

☒ District Court  ☐ Denver Juvenile Court
_____ County, Colorado

Court Address:

1437 Bannock St #256 Denver CO

DATE FILED: February 26, 2019 5:38 PM
FILING ID: 984E0D17B9B8B
CASE NUMBER: 2018CV651

In the Interest of:

Plaintiff

Petitioner: Malan Dean Tygrett

v.

Defendant

Respondent: The City and County of Denver,
acting by and through its Board of
Water Commissioners

▲ COURT USE ONLY ▲

Attorney or Party Without Attorney (Name and Address):

Richard K Blundell 10358
Robin Cochran, 12665

Phone Number 970 356 8900  E-mail: rick@rkblaw.net

FAX Number: 970 353 9977  Atty. Reg. #: 10358

Case Number: 2018CV 651

Division 215  Courtroom

## WAIVER OF SERVICE

I, Kristine Bates _____ accept service on 2-25-19 (date) of the
Summons and Verified Petition in this case, having received a copy of each and consent to the hearing held on the date set in
the Summons or any date and time the case is continued for hearing

Complaint

_____
Respondent

Subscribed and affirmed, or sworn to before me in the County of DENVER , State of Colorado this
25th day of FEBRUARY

My commission expires: 8/22/22

LORI JEAN FRASER
Notary Public
State of Colorado
Notary ID # 19974008914
My Commission Expires 08-22-2022

_____
Deputy Clerk/Notary Public

## RETURN OF SERVICE

I declare under oath that I served this Summons and a copy of the Petition in this case on the Respondent in
_____ (County) _____ (State) on _____ (date) _____ (time) at the following location
_____

Check one

☐ By handing it to a person identified to me as the Respondent.

☐ By leaving it with the Respondent who refused service.

☐ By leaving it with _____ designated to receive service for the Respondent

☐ I am over the age of 18 years and am not interested in nor a party to this case.

☐ I attempted to serve the Respondent on _____ occasions but have not been able to locate the Respondent. Return to
the Petitioner is made on _____ (date)

☐ Private process server

☐ Sheriff _____ County
Fee $ _____ Mileage $ _____

Signature of Process Server

_____
Name (Print or type)

Subscribed and affirmed, or sworn to before me in the County of _____, State of _____ this
_____ day of _____ 20 _____

My commission expires: _____

_____
Notary Public

JDF 1503   R5/04   WAIVER OF SERVICE

STATE OF COLORADO
Denver District Court
1437 Bannock St., Ste 256 Denver, CO 80202

**Plaintiff:** Malon Dean Tygrett,
**v.**
**Defendant:**  City and County of Denver, City and
County of Denver acting by and through the Board
of Water Commissioners of the City and County
of Denver, also known as Denver Water and the
Mayor of Denver, Michael Hancock, in his official
capacity

DATE FILED: February 26, 2019 5:38 PM
FILING ID: 984E0D17B9B8B
CASE NUMBER: 2018CV651

▲ **COURT USE ONLY** ▲

Richard K. Blundell, #10358
Robin Cochran, #12665
3535 West 12ᵗʰ Street, Suite D
Greeley, CO 80634
Phone Number:    (970) 356-8900
Fax Number:       (970) 353-9977
Email:              rick@rkblaw.net

Case Number:  2018CV651
Division:  215

| **AMENDED COMPLAINT AND JURY DEMAND** |
| --- |

Plaintiff by and through his attorneys Richard K. Blundell and Robin Cochran, files this Amended Complaint and alleges as follows:

## NATURE OF THE CASE

1.    Plaintiff's employment discrimination, civil rights and retaliation action is brought against the Defendants for equitable and remedial relief and compensatory damages to redress Defendants' deprivation of his employment-related civil rights secured to him by the Age Discrimination Employment Act of 1967, (ADEA), the Americans With Disability Act, 42 U.S.C. 12101 as amended by the ADA Amendments Act of 2008 (ADAAA), the Rehabilitation Act of 1973, 29 U.S.C. §701, *et. seq.*, the First Amendment of the U.S. Constitution pursuant to 42 USC § 1983, and Colorado public policy and common law which prohibit retaliation for filing a worker's compensation claim.

2.    The Defendants discriminated against Plaintiff because of his age (over 50), because of his disability and retaliated against him because he had complained about safety issues, including, but not limited to, lack of safe access to the facility's parking lot. He was retaliated against for having a workplace injury and/or filing a workers compensation claim.  Younger employees who committed the same as or similar acts as those inaccurately and/or falsely alleged against Plaintiff were not terminated from employment.

3.   Plaintiff seeks awards of back pay, front pay, compensatory damages, damages for pain and suffering, attorneys' fees, costs of this action and/or reinstatement and other equitable or remedial relief.

## II. JURISDICTION AND VENUE

4.   This Court has subject matter jurisdiction over federal claims included herein. Said claims are brought to recover damages and to secure other relief for the deprivation of Plaintiff's civil rights. Such federal laws are applicable to municipal governments, entities, and employees. The Denver District Court has jurisdiction of these claims.

5.   Venue is proper in the District Court for the City and County of Denver because the employment practices or omissions alleged to be unlawful were committed within the City and County of Denver and the parties include Denver municipal governmental entities and municipal corporations.

## III. PARTIES

6.   Plaintiff Malon Dean Tygrett (hereinafter Mr. Tygrett or Plaintiff) is a citizen of the U.S. and at all relevant times a Colorado resident. He is a former employee of Defendant City and County of Denver acting by and through the Board of Water Commissioners of the City and County of Denver, hereinafter referenced as Denver Water. Plaintiff was born in 1961.

7.   At all relevant times, Plaintiff was an employee of Defendants within the meaning of both federal law and Colorado statutes and law.

8.   Defendant Denver City and County of Denver acting by and through the Board of Water Commissioners of the City and County of Denver (hereinafter Denver Water) is a municipal water utility physically located in Denver, Colorado and owned and operated by and through the City and County of Denver, a governmental entity and municipal corporation. The Defendants are subject to the personal jurisdiction of this Court.  Mayor Hancock is managing official for the City and County of Denver.

9.   Defendant Denver Water terminated Plaintiff's employment effective August 22, 2017. At all relevant times during Plaintiff's employment, Defendant employed over one hundred employees, and therefore is subject to the provisions of the ADEA, ADAAA, the U.S. Constitution, 42 USC and other relevant federal and state of Colorado statutes, and to the jurisdiction of this Court thereunder.

## IV. EXHAUSTION OF ADMINISTRATIVE REMEDIES

10.   All prerequisites or conditions precedent to the institution of this suit have been met. Plaintiff timely filed a charge of discrimination with the United States Equal Employment Opportunity Commission (EEOC) bearing charge #541-2017-02158. A copy of the Charge is attached hereto as Exhibit A. On September 25, 2018, the EEOC issued a Notice of Right to Sue in regard thereto.  This action was timely filed within ninety (90) days of plaintiff's receipt of said Notice of Right to Sue.

11.  On January 29, 2018, and again on June 27, 2018, Plaintiff timely served Notices of Intent to Sue pursuant to C.R.S. §24-20-109.

## V.  FACTUAL ALLEGATIONS

12.  Plaintiff was a long-term employee of Defendant Denver Water having worked for Denver Water for more than twenty years.  At the time of his termination Plaintiff worked as a Senior Equipment Operator in Defendant's Operations and Maintenance Division (hereinafter "O&M").

13.  Defendant Denver Water has shown a pattern of targeting and terminating employees who are over 40 and disabled.

14.  Plaintiff was injured on March 4, 2015, at the age of 53 when he slipped on ice at work getting into a loader.  He injured his back, hip, neck, head and sciatic nerve.  He filed a workers' compensation claim.

15.  Prior to that injury Plaintiff did not have any issues with his employer, Denver Water.

16.  Shortly after filing the worker's compensation claim, a driver of a vehicle allegedly complained that Plaintiff had tailgated her vehicle when he was driving a vehicle for Defendants. Plaintiff denied the allegations and gave his supervisor, Jack Tolmich, the names and telephone numbers of disinterested witnesses who had observed the incident and who substantiated Plaintiff's description of the event.   Denver Water did not investigate the allegations and instead gave Plaintiff what was essentially a verbal warning.

17.  In 2015 construction began at Defendant's Denver Water's campus.  The construction greatly reduced the size of parking lots and other areas.  Part of the parking lot was closed and part of it was inaccessible because of construction materials.  This made it more difficult and unsafe for all drivers and vehicles to drive through the campus.  This particularly affected large vehicles like semi-tractors and trailers; Plaintiff drove a semi-truck with a long trailer.

18.  Ongoing construction changes occurred frequently in the ever-shifting parking and driving areas which aggravated the difficulties and dangers of driving.

19.  Plaintiff advised Denver Water management, including Jack Tomlich, Tom Roode, and Mark Cripps about the dangerous conditions affecting vehicle traffic, but they ignored him and disregarded his suggestions for improvements.  They did nothing to alleviate the problems.

20.  Plaintiff's reports included the fact that construction limited the amount of travel, parking and access for all vehicles but especially for large vehicles.  Plaintiff suggested some remedies for minimizing the problem including putting up signage restricting parking, placing cones in the lots, or creating truck lanes.

21.  Despite Plaintiff's requests, Denver Water refused to put up signage, including "no parking signs", refused the create truck lanes, and made no effort to mitigate the dangers caused by

construction. This created problems for Plaintiff since he maneuvered large semi-trucks and trailers on a regular basis through Denver Water's campus.

22.    In the summer of 2016, Plaintiff asked a woman who had parked in a no parking zone to move her vehicle so he could drive his truck through the lot. The woman did not complain, but another employee did. A Human Resources employee then began interviewing Denver Water employees to determine whether Plaintiff created a hostile environment, although there were no allegations that he had done so.

23.    The Human Resources employee admitted that she typically did not question employees about other employees.

24.    The Human Resources employee did not have the education or experience to conduct the investigation. The investigation did not support the Human Resources employee's allegation that Plaintiff had created a "hostile environment" and did not reflect that Plaintiff had violated any anti-discrimination law. Despite the lack of evidence, Plaintiff was disciplined.

25.    Plaintiff continued to report safety hazards to management but his performance reviews in 2016 reflected that he was to mind his own business.

26.    Plaintiff was disciplined again as a result of his complaints.

27.    On July 28, 2017 Plaintiff was driving a semitruck and trailer and had to make a complicated three-point turn in the crowded parking lot at Denver Water. He had been making such turns for months because of construction. It was the only way to turn the semi-truck and tractor around. Management was aware of this practice.

28.    On July 28, 2017, a construction contractor parked his vehicle in an area that Denver Water drivers used to turn around large trucks and tractor trailers. Plaintiff had complained about contractors parking in these areas. Plaintiff waved his arms and pointed to another area where the contractor could park. The contractor did not move his truck so Plaintiff had to make a three-point turn as he had been doing for months. He did so safely.

29.    On approximately July 31, 2017, Mr. Roode alleged that the driver of the illegally parked vehicle complained that Plaintiff had "waved his hands in anger" at the him. The individual who allegedly complained did not allege that Plaintiff had acted unsafely or that he felt threatened or afraid of the manner in which Plaintiff turned his truck around.

30.    Mr. Roode alleged without evidence that Plaintiff "aggressively" maneuvered his vehicle to turn around in the yard. Plaintiff and other drivers had been making the three-point turn in tractor trailers for several months with the supervisors' knowledge.

31.    Denver Water had cameras to video tape activities in the yard and parking lot, including the lot where the incident allegedly occurred. Upon information and belief Denver Water, though aware of the alleged incident on July 28, 2017, failed to view the video of the event and instead destroyed the video. The film would have confirmed Plaintiff's statements about the incident.

32.   On July 31, 2018, Plaintiff was told that he was going to be taken off driving duties while Denver Water investigated Mr.Roode's allegation that Plaintiff had made an unsafe turn.

33.   On August 1, 2017, Plaintiff was temporarily put in a position moving heavy boxes; he suffered a severe back injury while working in this manual labor position.

34.   On August 22, 2017, after receiving reports that plaintiff had suffered a severe worker's compensation injury, Plaintiff was terminated for allegedly engaging in unsafe driving. Plaintiff denied the allegations.

35.   Upon information and belief, other videos of the parking lot were maintained; the video that would have captured the three-point turn and the interaction with the contractor was not preserved.  Had Denver Water reviewed and maintained the video, Plaintiff would have been vindicated.

36.   Plaintiff was terminated from employment based on false allegations that he operated his vehicle in an unsafe manner. As a result of the termination, Plaintiff has been unable to obtain other employment.

37.   After plaintiff was terminated, Defendants improved access to the parking area by implementing many of the suggestions made by Plaintiff.

### FIRST CLAIM FOR RELIEF: DISABILITY DISCRIMINATION ,
### THE AMERICANS WITH DISABILITY ACT  42 U.S.C. §§ 12101, et.seq.
### THE REHABILITATION ACT 29 U.S.C. §§ 791 AND 794

38.   Plaintiff incorporates by reference all preceding paragraphs as though fully set forth herein and incorporates the factual allegations in Exhibit A.

39.   As demonstrated by his long term and successful performance with Defendant Denver Water, Plaintiff was qualified for his position.

40.   Plaintiff was initially injured on March 4, 2015.

41.   Plaintiff was injured again on August 1, 2017, and placed on restricted duty.  He was terminated from employment on August 22, 2017.

42.   Plaintiff has a disability as defined by law and he was qualified for his position.

43.   Defendant Denver Water subjected Plaintiff to false allegations, abuse, harassment, and discrimination after his injury.

44.   Defendants falsely alleged that Plaintiff had been rude to a contractor and had unsafely operated a vehicle in Denver Water's parking lot.  Denver Water terminated him from employment allegedly based on accusations it knew were false, and which were a pretext to terminate Plaintiff because of his disability.  Defendant did not preserve evidence that would have exonerated Plaintiff.

45.   Defendants could have accommodated Plaintiff's disability without undue hardship.

46.   Defendants did not terminate non-disabled employees who had engaged in the same or substantially similar behavior as that alleged against Plaintiff.

47.   Defendants discriminated against Plaintiff by terminating his employment because he was disabled, by refusing to accommodate him, and failing to engage in the interactive process by terminating Plaintiff without discussion of possible accommodation.

48.   Defendants' actions were in violation of the Americans with Disabilities Act, 42 U.S.C.§§12101, *et. seq.* and the Rehabilitation Act, 29 U.S.C.§§791 and 794.

49.   As a direct and proximate result of the foregoing violations of the ADAAA, Plaintiff has sustained economic and non-economic damages, including but not limited to, loss of wages and other benefits, lost interest on those wages and benefits, and loss of retirement benefits

## SECOND CLAIM FOR RELIEF:
## AGE DISCRIMINATION
### Unlawful Intentional Age Discrimination in violation of
### the ADEA, 29 U.S.C.§621 et. seq.

50.   Plaintiff incorporates by reference all preceding paragraphs as though fully set forth herein, and incorporates the factual allegations contained in Exhibit A.

51.   The ADEA makes it unlawful for employers and their agents "to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age. 29 U.S.C. §623(a)(1).

52.   Plaintiff was born on October 18, 1961, and was over the age of 50 at the time he was unlawfully terminated by Defendants.

53.   Plaintiff was qualified for his position with Defendant Denver Water.

54.   Defendants' reasons for terminating Plaintiff from employment were pretextual and untrue.

55.   Defendants knew or had reason to know that the reasons for termination were untrue.

56.   Defendants did not conduct a reasonable investigation of the allegations against Plaintiff although they have conducted such reasonable investigation of employees who are younger than Plaintiff.  This include, without limitation, the failure to preserve evidence.

57.   Defendants falsely alleged that Plaintiff had been rude to a contractor and had unsafely operated a vehicle in Denver Water's parking lot.  Defendants terminated him from employment allegedly based on accusations it knew were false, and which were a pretext to terminate Plaintiff because of his age.

58.     Defendants did not terminate younger employees who had engaged in the same, substantially similar or even more serious behavior as that alleged against Plaintiff.

59.     The Defendants' violations of the ADEA were intentional and willful.

60.     As a direct and proximate result of the foregoing violations, Plaintiff has sustained economic and non-economic damages, including but not limited to, loss of wages and other benefits, lost interest on those wages and benefits, and loss of retirement benefits.

### THIRD CLAIM FOR RELIEF
Workers' Compensation Retaliation in
Violation of Public Policy and Common Law

61.     Plaintiff incorporates by reference all preceding paragraphs as though fully set forth herein. Plaintiff also incorporates the factual allegations contained in Exhibit A.

62.     Plaintiff had a right to enter into a contract for employment with Defendants with the reasonable expectation that Defendants would treat him lawfully, fairly, in good faith, honestly, and without retaliation in compliance with all requirements of law, specifically Plaintiff's right to file and pursue a Workers' Compensation claim, pursuant to the Colorado Workers' Compensation Act in accordance with the holding in *Lathrop v. Entenmann's Inc.*, 770 P.2d 1367 (Colo. App. 1989).

63.     Defendants engaged in Workers' Compensation retaliation against Plaintiff because of his occupational injury by willfully and pretextually terminating his employment.

64.     As a direct and foreseeable result of Defendants' acts and omissions described herein, Plaintiff has sustained economic and non-economic damages, including but not limited to, loss of wages and other benefits, lost interest on those wages and benefits, and loss of retirement benefits.

### FOURTH CLAIM FOR RELIEF
(Freedom of Speech  First Amendment)

65.     Plaintiff incorporates by reference all preceding paragraphs as though fully set forth herein. Plaintiff also incorporates the factual allegations contained in Exhibit A.

66.     Plaintiff actions of complaining about the existing hazards and unsafe driving conditions at Denver Water's campus.  These conditions affected all vehicles traversing the campus and were not limited to Plaintiff's vehicle.

67.     Plaintiff had concerns that the construction at the Denver Water campus had created congestion and safety hazards for traffic.  He suggested some remedies such as increased signage and specific traffic lanes.  He addressed his concerns and suggested remedies to Denver Water management, including Jack Tomlich, Tom Roode, and Mark Cripps.  They ignored his concerns and did nothing to alleviate the problems.

68.   As a result of Plaintiff's reports of unsafe and hazardous driving conditions, Defendants instituted disciplinary action and terminated Plaintiff from employment, alleging that he had unsafely parked his semi-tractor and trailer on the premises. These allegations were untrue. In fact, Plaintiff had an excellent driving record.

69.   Defendants' true purpose for initiating discipline was to retaliate against Plaintiff because of his observations and remarks about the safety hazards faced by all drivers on the Denver Water campus.

70.   Plaintiff's speech addressed matters of public concern—that construction created ongoing safety hazards to vehicles traversing the Denver Water campus and that management could mitigate those hazards by implementing appropriate safeguards. Additionally, his interest in speech outweighed any interest the Defendants had in promoting the efficiency of the public service it produces. Plaintiff's complaints therefore constituted protected activity under the First amendment to the U. S. Constitution.

71.   Plaintiff's protected speech was a substantial or motivating factor in the decision to discharge Plaintiff.

72.   Defendants retaliated against or were motivated to discharge Plaintiff because of his speech despite the fact that such First Amendment protection was well established. Their actions were taken under color of state law, and violate the Free Speech Clause of the First Amendment.

73.   Defendants maintain a policy, practice, custom or procedure of retaliation against individuals who have engaged in protected activity under the First Amendment. Defendants ratified the actions of supervising manger.

74.   Defendants practice, policy, custom or procedure of retaliating against its employees for engaging in protected activity caused, or directly resulted in the termination of plaintiff's employment by Defendants.

75.   As a direct and proximate result of Defendants' violation of the Free Speech Clause of the First Amendment, Plaintiff has suffered economic and non-economic damages, including but not limited to, loss of wages and other benefits, lost interest on those wages and benefits, and loss of retirement benefits.

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment in his favor:

   (a)   Awarding back and front pay;

   (b)   Awarding lost employment benefits, health and retirement benefits, and other compensation lost to him as a result of his termination;

   (c)   Liquidated damages doubling the award of interest, wages, lost employment and retirement benefits, and other compensation lost to him as a result as a result of Defendants' discriminating against him on the basis of his age;