IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 19-cv-00726-MEH

MALON DEAN TYGRETT,

 Plaintiff,

v.

CITY AND COUNTY OF DENVER ACTING BY AND THROUGH ITS BOARD OF
WATER COMMISSIONERS, a/k/a Denver Water, and
THOMAS J. ROODE, in his individual capacity,

 Defendants.

---

# ORDER

---

**Michael E. Hegarty, United States Magistrate Judge**.

 This matter stems from the termination of Plaintiff's employment at Defendant Denver Water ("Denver Water"). Plaintiff asserts three claims for relief under the Americans with Disabilities Act ("ADA") and the Rehabilitation Act against Denver Water, and a single claim for relief pursuant to 42 U.S.C. § 1983 against Defendant Thomas J. Roode for violation of the Equal Protection Clause of the Fourteenth Amendment. Now before the Court is Defendant Roode's Motion to Dismiss (ECF 44). Defendant Roode seeks dismissal of Plaintiff's sole claim against him, arguing that he is entitled to qualified immunity and Plaintiff fails to state an equal protection claim. For the reasons that follow, the Court will grant Defendant Roode's Motion.

## STATEMENT OF FACTS

 The following are relevant factual allegations (as opposed to legal conclusions, bare assertions, or merely conclusory allegations) made by Plaintiff in his Third Amended Complaint,

which are taken as true for analysis under Fed. R. Civ. P. 12(b)(6) pursuant to *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Plaintiff was a long-time employee of Denver Water. On March 4, 2015, at the age of fifty-three, he was seriously injured at work when he slipped on ice while climbing into a truck. Plaintiff filed and pursued a workers' compensation claim and sought treatment at Denver Water's on-site heath care facility. As a result of his injury, Plaintiff was unable to meet the physical requirements of his job, and work restrictions or accommodations were warranted. Denver Water threatened Plaintiff with termination if he had work restrictions or sought accommodations that Denver Water could not accommodate.

Fearing for his job, Plaintiff returned to work with either intermittent accommodations or no accommodations at all. In June and July of 2015, he repeatedly informed his supervisors of his injuries and need for accommodations. He went on and off modified duty throughout 2015 but, because he was working outside of his physical capacity, his injury never healed and worsened over time. On January 18, 2017, Plaintiff received an independent medical examination related to his 2015 injury. The examination revealed that Plaintiff's injuries were on-going, and the examiner opined that Plaintiff "probably does need permanent restrictions." Plaintiff did not receive accommodations consistent with the opinion.

At all relevant times Plaintiff's direct supervisor and Defendant Roode knew about his 2015 injury and need for accommodations. On or about July 25, 2017, Denver Water assigned Plaintiff to perform duties outside of his physical capabilities, resulting in a re-injury of his 2015 injury. As a result, Plaintiff had to take the next two days off from work.

On July 28, 2017, Plaintiff returned to work and was driving a semi-truck with attached trailer in the crowded Denver Water parking lot. As he attempted to turn his truck around, a construction contractor parked his vehicle in the area where Denver Water drivers turn around large trucks and tractor trailers. Plaintiff waved his arms and pointed to the area where the contractor could park, however the contractor did not move his vehicle. Plaintiff was, therefore, required to execute a complicated, three-point turn that he had done before. He did so safely and within the cited speed limit. Plaintiff complained that the contractor was causing a safety hazard in the parking lot.

On July 31, 2017, Defendant Roode alleged that the contractor had complained that Plaintiff "waved his hands in anger" at him and was driving five to six miles per hour in the parking lot, whose speed limit is ten miles per hour. Defendant Roode also "falsely alleged, without evidence, that Mr. Tygrett 'aggressively' maneuvered his vehicle to turn around" in the parking lot. Cameras videotape the Denver Water parking lot, but Denver Water failed to view and then destroyed the video from July 28, 2017 that captured the area where Plaintiff executed the three-point turn. Videos capturing the other areas of the parking lot were maintained. Plaintiff was taken off driving duties while Denver Water investigated Defendant Roode's allegation that Plaintiff made an unsafe turn.

On August 1, 2017, Plaintiff was temporarily put in a far more physically demanding position and, again, re-injured and exacerbated his pre-existing 2015 injury. When he sought treatment, he was told this injury was unrelated to his 2015 injury. On August 22, 2017, after reports that Plaintiff suffered another occupational injury, Plaintiff was terminated for allegedly engaging in unsafe driving.

3

## **LEGAL STANDARDS**

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Plausibility, in the context of a motion to dismiss, means that the plaintiff pleaded facts which allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* The Supreme Court requires a two-prong analysis. First, a court must identify "the allegations in the complaint that are not entitled to the assumption of truth," that is, those allegations that are legal conclusions, bare assertions, or merely conclusory. *Id.* at 678-80. Second, the Court must consider the factual allegations "to determine if they plausibly suggest an entitlement to relief." *Id.* at 681. If the allegations state a plausible claim for relief, such claim survives the motion to dismiss. *Id.* at 680.

Plausibility refers "to the scope of the allegations in a complaint: if they are so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiffs 'have not nudged their claims across the line from conceivable to plausible.'" *Khalik v. United Air Lines*, 671 F.3d 1188, 1191 (10th Cir. 2012) (quoting *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008)). "The nature and specificity of the allegations required to state a plausible claim will vary based on context." *Kan. Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1215 (10th Cir. 2011). Thus, while the Rule 12(b)(6) standard does not require that a plaintiff establish a prima facie case in a complaint, the elements of each alleged cause of action may help to determine whether the plaintiff has set forth a plausible claim. *Khalik*, 671 F.3d at 1191.

However, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. The complaint must provide "more than labels and conclusions" or merely "a formulaic recitation of the elements of a cause of action," so that "courts 'are not bound to accept as true a legal conclusion couched as a factual allegation.'" *Twombly*, 550 U.S. at 555 (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct," the complaint has made an allegation, "but it has not shown that the pleader is entitled to relief." *Id*. (quotation and citation omitted).

## **ANALYSIS**

Plaintiff asserts one claim against Defendant Roode in his individual capacity pursuant to 42 U.S.C. § 1983 for violation of the Equal Protection Clause of the Fourteenth Amendment. He alleges that "[i]n taking adverse action against [Plaintiff], Roode acted pursuant to an official policy or custom of Denver Water in discriminating against disabled employees and/or those disabled employees who became disabled as a result of a workplace injury." Third Am. Compl. ¶ 99, ECF 37. He continues, "When Roode terminated [Plaintiff] from his position, Roode intentionally violated [Plaintiff's] constitutional rights . . . by purposefully treating him differently from and more harshly than other employees." *Id*. at ¶ 101.

Defendant Roode makes two explicit arguments for dismissal of Plaintiff's claim: (1) he is entitled to qualified immunity, and (2) Plaintiff fails to allege a plausible equal protection claim. Within his qualified immunity argument, Defendant Roode also contends that Plaintiff's equal

protection claim is preempted because it is duplicative of the ADA claims asserted against Denver Water and alleges a deprivation of a right created by the ADA.

**I.     Qualified Immunity**

The doctrine of qualified immunity protects from litigation a public official whose possible violation of a plaintiff's civil rights was not clearly a violation at the time of the official's actions. *See Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). "Qualified immunity balances two important interests - the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009). Because qualified immunity is an immunity from suit, rather than a mere defense to liability, it is effectively lost if a case is erroneously permitted to go to trial. *Id*. at 231; *Ahmad v. Furlong*, 435 F.3d 1196, 1198 (10th Cir. 2006) ("The privilege is an immunity from suit rather than a mere defense to liability."). The "driving force behind creation of the qualified immunity doctrine was a desire to ensure that insubstantial claims against government officials will be resolved prior to discovery." *Pearson*, 555 U.S. at 231-32 (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 n.2 (1987)). Accordingly, qualified immunity questions must be resolved at the earliest possible stage in litigation." *Id*. at 232.

When a defendant asserts qualified immunity at summary judgment, the plaintiff has a two-fold burden to overcome the asserted immunity: (1) "rebut the [defendant's] no-constitutional-rights arguments"; and (2) "demonstrate that any constitutional violation was grounded in then-extant clearly established law." *Cox v. Glanz*, 800 F.3d 1231, 1245 (10th Cir. 2015) (citing *Riggins v. Goodman*, 572 F.3d 1101, 1107 (10th Cir. 2009)); *see also Felders v. Malcom*, 755 F.3d 870, 877-78 (10th Cir. 2014) ("[T]he 'record must clearly demonstrate the plaintiff has satisfied his

heavy two-part burden; otherwise, the defendants are entitled to qualified immunity.'" (quoting *Medina v. Cram*, 252 F.3d 1124, 1128 (10th Cir. 2001))). An official's conduct violates clearly established law when, at the time of the challenged conduct, "[t]he contours of [a] right [are] sufficiently clear" that every "reasonable official would have understood that what he is doing violates that right." *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011). To satisfy the clearly established prong of the test, the Tenth Circuit requires that "there must be a Supreme Court or Tenth Circuit decision on point, or the clearly established weight of authority from other courts must have found the law to be as the plaintiff maintains." *Clark v. Wilson*, 625 F.3d 686, 690 (10th Cir. 2010).

Traditionally, there has been a two-step process for resolving qualified immunity questions: "First, a court must decide whether the facts that a plaintiff has alleged . . . or shown . . . make out a violation of a constitutional right. . . . Second, if the plaintiff has satisfied this first step, the court must decide whether the right at issue was clearly established at the time of the defendant's alleged misconduct." *Pearson*, 555 U.S. at 232 (quoting *Saucier v. Katz*, 533 U.S. 194 (2001) (internal citations and quotation marks removed)). However, the Supreme Court has afforded courts the discretion to decide "which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Id*. at 236; *see also Christensen v. Park City Mun. Corp.*, 554 F.3d 1271, 1277 (10th Cir. 2009). In this case, the Court begins its discussion with the first prong, whether Plaintiff has alleged facts showing a violation of a constitutional right.

The Equal Protection Clause "is essentially a direction that all persons similarly situated should be treated alike." *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985). An equal protection claim may be asserted with respect to a group or a "class of one," in which a

7

plaintiff alleges that he or she has been treated differently from other similarly situated but does not allege that differential treatment was due to his or her membership in particular class. *A.M. ex rel. F.M. v. Holmes*, 830 F.3d 1123, 1166 (10th Cir. 2016). Class of one equal protection claims are not cognizable in the public employment context. *Engquist v. Or. Dep't of Agr.*, 553 U.S. 591, 609 (2008). Because Plaintiff's equal protection claim is premised on adverse actions related to his public employment, he must sufficiently allege a "traditional," class-based claim to state a claim for relief.

Class-based equal protection jurisprudence generally proceeds in two steps. *SECSYS, LLC v. Vigil*, 666 F.3d 678, 685-86 (10th Cir. 2012). First, a court examines whether the challenged state action intentionally discriminates between groups of persons. *Id*. at 685. "Second, and after an act of intentional discrimination against a particular group is identified either by presumption or evidence and inference, courts ask whether the state's intentional decision to discriminate can be justified by reference to some upright government purpose." *Id*. at 686. Different types of equal protection claims call for different forms of review; a claim that a state actor discriminated on the basis of a suspect (e.g., race), quasi-suspect (e.g., gender), or a non-suspect classification calls for strict, intermediate, or rational basis scrutiny, respectively. *See Price-Cornelison v. Brooks*, 524 F.3d 1103, 1109-10 (10th Cir. 2008). In each instance, to assert a viable equal protection claim a plaintiff must first make a threshold showing that he was treated differently from others who were similarly situated to him. *Brown v. Montoya*, 662 F.3d 1152, 1172-73 (10th Cir. 2011).

In this case, Plaintiff alleges that Defendant, in taking adverse employment action against him, "discriminat[ed] against disabled employees and/or those disabled employees who became disabled as a result of a workplace injury." Third Am. Compl. ¶ 99. He further alleges that there

was no rational basis for treating him "differently from others outside his protected class." *Id*. at ¶ 102. As noted above, in addition to alleging a government action discriminated against him based on a classification that lacked a rational basis, Plaintiff must allege facts to show that an otherwise similarly situated person was treated differently than he was. *Brown*, 662 F.3d at 1173. Plaintiff fails to supply such allegations.

In response to the Motion, Plaintiff summarily states that he "has alleged a litany of facts, which taken as true, establish that he is plausibly entitled to relief," and cites to twenty-six paragraphs from his Third Amended Complaint. Resp. 6, ECF 49. However, only two of those twenty-six paragraphs contain any mention of other employees. The first states that "[d]uring the course of over 20 years that [Plaintiff] worked for Denver Water, he became aware of other employees who had committed similar or more serious infractions than that alleged against him in the parking lot incident and these individuals received little or no discipline." Third Am. Compl. ¶ 71. The second alleges that when Defendant terminated Plaintiff, Defendant "purposefully treat[ed] him differently from and more harshly than other employees." *Id*. at ¶ 101.

In *Brown v. Montoya*, 662 F.3d at 1173-74, the Tenth Circuit reversed a decision denying a motion to dismiss based on the requirement that a plaintiff asserting an equal protection claim allege differential treatment from similarly situated individuals. In holding the plaintiff's allegation insufficient to support an equal protection claim, the court noted that while the plaintiff "alleges that he was treated differently from others, . . . . he does not allege facts about any particular person or persons who were treated differently from him. Instead, [he] makes conclusory allegations." *Id*. at 1173. The court continued that "in the context of a § 1983 claim, conclusory allegations are not sufficient to state a constitutional violation." *Id*. (internal quotations omitted). Like the plaintiff in *Brown*, Plaintiff in this case provides two, conclusory paragraphs

which read as bare recitals of the necessary threshold showing for his claim. Despite claiming he has provided a "litany" of facts, Plaintiff did not identify or provide any details about an individual or individuals who were similarly situated but treated differently from Plaintiff due to Plaintiff's membership in the identified group of disabled workers. Rather than provide factual allegations that the Court could take as true for the purposes of this Motion, Plaintiff simply provides the "threadbare" allegation that he was treated differently from other employees who had committed similar or more serious infractions. This is insufficient to make the required showing of differential treatment and, thus, insufficient to support an Equal Protection Clause violation.

## CONCLUSION

Because Plaintiff fails to allege a plausible equal protection claim against Defendant Roode, he fails to carry his burden under the first prong of qualified immunity. Therefore, Defendant Roode is entitled to qualified immunity from Plaintiff's sole claim against him. Accordingly, Defendant Roode's "Motion to Dismiss Plaintiff's Equal Protection Claim Pursuant to F.R.C.P. 12(b)(6)" [filed September 13, 2019; ECF 44] is **granted**. As no claims remain against Defendant Roode, the Clerk of the Court is directed to dismiss him from this case. Plaintiff's claims against Defendant Denver Water remain.

SO ORDERED.

Entered and dated at Denver, Colorado, this 24th day of February, 2020.

BY THE COURT:

*Michael E. Hegarty*

Michael E. Hegarty
United States Magistrate Judge