**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 19-cv-726-MEH

MALON DEAN TYGRETT,

    Plaintiffs,

v.

CITY AND COUNTY OF DENVER, acting by and through its Board of Water Commissioners a/k/a DENVER WATER,

    Defendant.

---

**PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT**

---

COMES NOW Plaintiff, Malon Dean Tygrett (hereinafter "Plaintiff"), by and through his undersigned attorney, and for his Motion for Partial Summary Judgment, states as follows:

    I.    NATURE OF MATTER BEFORE THE COURT

This matter was tried to a jury from April 13 through April 16, 2021. The jury found that Plaintiff proved by a preponderance of the evidence that: (1) he was disabled at the time Denver Water terminated him; (2) his disability was a motivating factor in Denver Water's decision to terminate his employment; (3) he requested an accommodation for which Denver Water received adequate notice; and (4) Denver Water could have reasonably accommodated Mr. Tygrett, allowing him to perform the essential functions of his job, and Denver Water failed to do so. As a result, the jury awarded Mr. Tygrett $3,000,000.00 in compensatory damages. (Dkt. # 127.)

Equitable remedies, including back pay and front pay, remain to be decided by the court. In its Answer, Denver Water alleged as an affirmative defense that Mr. Tygrett failed to mitigate

1

his damages. This issue also remains to be decided by a finder of fact. However, even though it has the burden of proof on its affirmative defense, Denver Water never disclosed any witnesses or evidence in support of that defense in compliance with Fed.R.Civ.P 26 prior to the end of discovery or at any time thereafter. Moreover, discovery was not bifurcated for the purpose of Defendant's affirmative defense or disclosure obligations. Ironically, when Plaintiff listed a witness to testify at trial that the Court found had not been disclosed in accordance with Fed.R.Civ.P. 26 the Court was swift to hold that, "[b]ecause Plaintiff did not disclose Mr. Pasillas in a way that complied with his Rule 26(a) and (e) obligations, he may not use him as a witness at the trial." (Dkt. # 112, pg. 2.)

Pursuant to Federal Rule of Civil Procedure 56 and the Court's Order of August 9, 2021 granting Plaintiff leave to file this Motion for Partial Summary Judgment, Plaintiff now moves for an Order granting partial summary judgment in his favor and against Denver Water with respect to Denver Water's failure to mitigate affirmative defense. Because Denver Water has failed to disclose any witnesses or evidence in support of its affirmative defense, Denver Water has likewise failed to raise a genuine issue of material fact and its failure to mitigate affirmative defense fails as a matter of law. The Court should therefore grant partial summary judgment in Mr. Tygrett's favor on Denver Water's failure to mitigate affirmative defenses.

## II.   LEGAL STANDARD

Summary judgment should be granted, "if the pleadings, the discovery and **disclosure materials** on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). Initially, the movant bears the "responsibility of informing the district court of the basis for its motion, and

identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-233, 106 S.Ct. 2548 (1986) (concluding that Rule 56 "mandates the entry of summary judgment . . . against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial"). If this burden is met, then the non-moving party must set forth specific facts showing that there is a genuine dispute for trial. *Id*. at 324. A fact is material if it has the potential to affect the outcome of a dispute under applicable law. *Ulissey v. Shvartsman*, 61 F.3d 805, 808 (10th Cir. 1995). An issue is genuine if a rational trier of fact could find for the non-moving party. *Adams v. Am. Guarantee & Liab. Ins.Co.*, 233 F.3d 1242, 1246 (10th Cir. 2000).

In performing this analysis, the factual record and any reasonable inferences therefrom are construed in the light most favorable to the non-moving party. *Id*. However, a mere "scintilla of evidence" is insufficient to avoid summary judgment. *Turner v. Public Service Co. of Colorado*, 563 F.3d 1136, 1142 (10th Cir. 2009). Instead, a non-movant "must proffer facts such that a reasonable jury could find in her favor." *Id*. This Denver Water cannot do.

III. UNDISPUTED FACTS AND JURY FINDINGS

A. JURY FINDINGS:

1. Mr. Tygrett was disabled at the time Denver Water terminated him. (Dkt. # 127, Question 1.)

2. Mr. Tygrett's disability was a motivating factor in Denver Water's decision to terminate Mr. Tygrett's employment. (Dkt. # 127, Question 2.)

3

3. Mr. Tygrett requested an accommodation for which Denver water received adequate notice. (Dkt. # 127, Question 3.)

4. Denver Water could have reasonably accommodated Mr. Tygrett, allowing him to perform the essential functions of his job, and Denver Water failed to do so. (Dkt. # 127, Question 4.)

B. DEFENDANT'S ANSWER AND AFFIRMATIVE DEFENSE.

This case was originally filed in Colorado State Court on December 24, 2018. It was removed to this Court on March 11, 2019. (Dkt. # 1). On July 11, 2019 Defendant filed its Answer to Plaintiff's Third Amended Complaint (Dkt. # 38). For its sixth defense, Denver Water asserted that, "Plaintiff failed to mitigate his alleged damages." (Dkt. # 38, pg. 12 ¶ 6.)

C. THE DISCOVERY DEADLINE.

The operative Scheduling Order in this case is found at Dkt. #36. Under the terms of the Scheduling Order, discovery cut-off was initially January 31, 2020. [Dkt. #36, p. 12]. On January 30, 2020 the Court granted the Parties' Motion to Amend the Scheduling Order, extending the discovery deadline to March 31, 2020. [Dkt. # 55]. A second Motion to Amend the Scheduling Order was granted on March 20, 2020 extending the discovery deadline to June 30, 2020. [Dkt. # 58]. The discovery deadline was yet again extended through August 14, 2020. [Dkt. # 77]. At no point did the Scheduling Order or any of the orders granting an extension of time for discovery bifurcate discovery for the purpose of Denver Water being allowed additional time to conduct discovery or disclose witnesses and evidence in support of its failure to mitigate affirmative defense. (See Dkt. # 36, 55, 58, 77.)

D.  DENVER WATER'S DISCLOSURES.

Fed. R. Civ. P. 26(a)(1) provides that a party must, "without awaiting a discovery request, provide to the other parties: (i) the name and, if known, the address and telephone number of each individual likely to have discoverable information—along with the subjects of that information—that the disclosing party may use to support its claims **or defenses**, unless the use would be solely for impeachment." (emphasis supplied). Denver Water served its Initial Disclosures pursuant to Fed. R. Civ. P. 26(a)(1) on **July 25, 2019**. (See Exhibit 1.) Denver Water served its First Supplemental Disclosures pursuant to Fed.R.Civ.P. 26(a)(1) on **April 10, 2020.** (See Exhibit 2.) Denver Water served its Second Supplemental Disclosures pursuant to Fed.R.Civ.P. 26(a)(1) on **March 29, 2021**. (See Exhibit 3.) Denver Water served its Third Supplemental Disclosures pursuant to Fed.R.Civ.P. 26(a)(1) on **April 6, 2021**. (See Exhibit 4.) Denver Water served its Fourth Supplemental Disclosures pursuant to Fed.R.Civ.P. 26(a)(1) on **June 1, 2021**. (See Exhibit 5.) Denver Water did not serve any expert disclosures pursuant to Fed.R.Civ.P. 26(a)(2). (Declaration of Jennifer Robinson, attached hereto as "Exhibit 6.")

1.  Defendant's Initial Disclosures.

In its initial disclosures Denver Water did not even identify Mr. Tygrett as a witness. (Ex. 1.) Moreover, none of the witnesses disclosed were listed to provide testimony about Denver Water's failure to mitigate affirmative defense. All of the witnesses were listed to testify only about facts specific to Denver Water and the events leading to Mr. Tygrett's termination as follows:

> 1.  Thomas J. Roode, Chief Operations & Maintenance Officer, Denver Water, XXX Denver, Colorado 80204. (303) XXX-XXXX. Mr. Roode is the Chief of the division in which Plaintiff worked and a current Defendant in this matter. Mr. Roode is likely to have discoverable information about

Plaintiff's employment and his decision to terminate Plaintiff's employment for cause.

2.  Marc Cripps, Fleet Shop Supervisor, Denver Water XXX Denver, CO 80204. (303) XXX-XXXX. Mr. Cripps is likely to have discoverable information about Plaintiff's employment, the events leading to Plaintiff's termination, and Denver Water's policies and procedures regarding safe work practices.

3.  Jack Tolmich, Fleet & Support Manager, Denver Water, XXX Denver, CO 80204. (303) XXX-XXXX. Mr. Tolmich is likely to have discoverable information about Plaintiff's employment, the events leading to Plaintiff's termination, and Denver Water's policies and procedures regarding safe work practices.

4.  Dawn Cogan, Health Services Manager, Denver Water, XXX Denver, CO 80204. (303) XXX-XXXX. Ms. Cogan is likely to have discoverable information about Plaintiff's occupational injuries and benefits received pursuant to Colorado's Workers' Compensation procedures, Denver Water's clinic practices and procedures related to occupational injuries, and Denver Water's policies and procedures for providing reasonable accommodations.

5.  Jessica Thompson, Nurse Senior, Denver Water, XXX Denver, CO 80204. (303) XXX-XXXX. Ms. Thompson is likely to have discoverable information about Plaintiff's occupational injuries and benefits received pursuant to Colorado's Workers' Compensation procedures, as well as Denver Water's clinic practices and procedures related to occupational injuries.

6.  Erin Lay, Physician Assistant, Denver Water, XXX Denver, CO 80204. (303) XXX-XXXX. Ms. Lay is likely to have discoverable information about Plaintiff's occupational injuries and benefits received pursuant to Colorado's Workers' Compensation procedures, as well as Denver Water's clinic practices and procedures related to occupational injuries.

7.  Dr. Hugh Macaulay, Occupational Health Doctor, XXX Street Englewood, CO 80110. (720) XXX-XXXX. Dr. Macaulay is likely to have discoverable information regarding Plaintiff's occupational injuries and workers' compensation benefits, as well as Denver Water's clinic practices and procedures related to occupational injuries.

8.  Dr. Stephen Danahey, Occupational Health Doctor, Concentra XXX Denver, CO 80210. (303) XXX-XXXX. Dr. Danahey is likely to have discoverable information about Plaintiff's occupational injuries and workers' compensation benefits, as well as Denver Water's clinic practices and

procedures related to occupational injuries.

9. Georganne Chapman, Employee Relations Manager, Denver Water XXX Denver, CO 80204. (303) XXX-XXXX. Ms. Chapman is likely to have discoverable information about Denver Water's policies and procedures regarding corrective action, in general, and specifically about the processes related to Plaintiff's termination.

10. Brian Good, Chief Administrative Officer, Denver Water XXX Denver, CO 80204. (303) XXX-XXXX. Mr. Good is likely to have discoverable information regarding Denver Water's campus redevelopment, including changes to traffic control in the relevant time period of Plaintiff's claims.

11. Jeremy Ross, Director Engineering – Projects, Denver Water XXX Denver, CO 80204. (303) XXX-XXXX. Mr. Ross is likely to have discoverable information regarding Denver Water's campus redevelopment, including changes to traffic control in the relevant time period of Plaintiff's claims.

12. Melissa Hollenbaugh, Safety Manager, Denver Water XXX Denver, CO 80204. (303) XXX-XXXX. Ms. Hollenbaugh is likely to have discoverable information about Denver Water's policies and procedures regarding safety, including video cameras on Denver Water's campus during the time of the events leading to Plaintiff's termination.

13. Sergio Chavez, Iron Woman, XXX Denver, CO 80216. (303) XXX-XXXX. Mr. Chavez was involved in the incident leading up to Plaintiff's termination and is likely to have discoverable information about the July 28, 2017 incident involving Plaintiff.

14. Omar Moreno, Iron Woman, XXX Denver, CO 80216. (303) XXX-XXXX. Mr. Chavez was involved in the incident leading up to Plaintiff's termination and is likely to have discoverable information about the July 28, 2017 incident involving Plaintiff.

15. Sandra Miller, XXX. Ms. Miller is likely to have discoverable information about Denver Water's policies and procedures for reasonable accommodations.

(See Ex. 1.)

    2.    <u>Defendant's Supplemental Disclosures</u>.

In its First Supplemental Disclosures Denver Water added three more witnesses to testify

only about facts related to Denver Water and Mr. Tygrett's employment there as follows:

> 1. Austin Steckler, Warehouse Manager, Denver Water, XXX Denver, Colorado 80204. (303) XXX-XXXX. Mr. Steckler is the current Warehouse Manager and can attest to the procedures followed, within the warehouse, for employees working there and performing light duty. Mr. Steckler is likely to have discoverable information about standard procedures for work performed in the warehouse.
>
> 2. Jeff Chavez, Fleet Supervisor/Admin. Support, Denver Water, XXX Denver, Colorado 80204. (303) XXX-XXXX. Mr. Chavez was Mr. Tygrett's supervisor for a period between March 15, 2015 to June 5, 2015. Mr. Chavez is likely to have discoverable information about Mr. Tygrett's employment during that time period.
>
> 3. Dan Fish, former Fleet Supervisor/Admin. Support and former Fleet Shop Supervisor, Denver Water, XXX Avenue Denver, Colorado 80204. (303) XXX-XXXX. Mr. Fish was previously employed by Denver Water and during his tenure was Mr. Tygrett's supervisor for a period between November 7, 2015 to June 2, 2017. Mr. Fish is likely to have discoverable information about Mr. Tygrett's employment during that time period.

(See Ex. 2.)

In its second and third supplemental disclosures, Denver Water did not disclose any additional witnesses. (See Exs. 3 and 4.) Denver Water's fourth supplemental disclosure was made post trial and disclosed the identity of a Denver Water employee related to the calculation of damages as follows:

> 1. Gary Brockett, Division Senior Analyst, Denver Water, XXX Denver, Colorado 80204. (303) XXX-XXXX. Mr. Brockett has information and knowledge regarding Denver Water's salary, benefits and retirement programs as well as Mr. Tygrett's historical salary and benefits. Mr. Brockett has completed calculations for potential back and front pay and will testify regarding same.

(See, Ex. 5.)

IV.     ARGUMENT

Employees claiming entitlement to back pay and benefits are required to make reasonable efforts to mitigate damages.[1] *E.E.O.C. v. Sandia Corp.,* 639 F.2d 600, 627 (10th Cir. 1980). The burden is on the employer to show that the claimant did not mitigate his or her damages. *Id.* To satisfy this burden, the employer must establish **both** that: (1) there were suitable positions available which the claimant could have discovered and for which he or she was qualified, and (2) the claimant failed to use reasonable care and diligence in seeking such positions. *Id.* (citing *United States v. Lee Way Motor Freight, Inc.,* 625 F.2d 918, 937 (10th Cir. 1979)); *see also Whatley v. Skaggs Companies, Inc.,* 707 F.2d 1129, 1138 (10th Cir. 1983), *cert. denied,* 464 U.S. 938, 104 S.Ct. 349, 78 L.Ed.2d 314 (1983) (no deduction in back pay for period from 1975 through 1980 when claimant was "disabled and was not seeking employment"[2]). Moreover, the available positions must be substantially similar to the position the plaintiff previously held. *E.E.O.C. v. Western Trading Co., Inc.*, 291 F.R.D. 615, 620 (D.Colo. 2013).

---

[1]     Here, Mr. Tygrett does not dispute that he has not been employed since Denver Water unreasonably failed to accommodate him and then unlawfully terminated his employment in August 2017.

[2]     In its Order of July 19, 2021, Dkt. # 145, the Court reads *Whatley* too narrowly, emphasizing only the defendant's argument related to an offset of disability benefits, "the defendant argued the trial court erred by not barring or offsetting the jury's award of back pay with the plaintiff's disability benefits." (Dkt. # 145, pg. 6.) However, the defendant in *Whatley* also argued failure to mitigate with regard to a deduction in back pay for period from 1975 through 1980 when claimant was "disabled and was not seeking employment." *Whatley* at 1138. The Court explained that, "[t]he trial court also expressly rejected a reduction of defendant's back pay liability based on plaintiff's disability, saying: Here, Whatley would not have suffered his disabling back injury had Skaggs not terminated him as lobby manager. Skaggs' act of discrimination forced Whatley from his management position to blue-collar jobs that required strenuous physical labor resulting in injury to his back." *Id.*, fn. 8.

A. **DEFENDANT MUST ESTABLISH THAT THERE WERE SUITABLE POSITIONS AVAILBLE.**

In order to satisfy its burden of establishing its failure to mitigate affirmative defense, a defendant is required to prove both prongs of the test. *Aguinaga v. United Food and Commercial Workers Int'l Union*, 993 F.2d 1463, 1474 (10th Cir. 1993), *cert. denied,* 114 S.Ct. 880 (1994). Where a defendant fails to establish the first prong, i.e., that suitable positions were available, it has failed its burden of proof and "evidence that supports the second prong of the test – i.e., the individual mitigation efforts of Plaintiffs – are simply irrelevant." *Aguinaga*, 993 F.2d at 1474. *See also*, *Wilson v. Union Pac. R. Co.*, 56 F.3d 1226, 1232 (10th Cir. 1995) where the 10th Circuit upheld the district Court's refusal to instruct the jury on failure to mitigate, holding that a plaintiff's "general failure to seek employment for eighteen months before trial does not alone suffice to justify a mitigation instruction; the defendant must also show that appropriate jobs were available."

Similarly, in *Garcia v. Wal-Mart Stores, Inc.*, 209 F.3d 1170, 1175 (10th Cir. 2000), the Tenth Circuit held that it was not error to refuse to instruct the jury on Defendant's failure to mitigate defense because Defendant failed to show that appropriate jobs were available: "Wal-Mart offered no evidence that appropriate jobs were available for someone in Garcia's condition or that such jobs were available to someone of her educational and skill level, but instead merely presented the evidence of its medical expert that she could return to sedentary light-duty or self-paced jobs." Likewise, in *EEOC v. Beverage Distributors Co., LLC,* 2013 WL 6458735, *3 and fn. 6 (D. Colo. 2013), *rev'd on other grounds*, 780 F.3d 1018 (10th Cir. 2015), Judge Arguello vacated the jury's finding of failure to mitigate because, although the defendant's expert identified numerous open positions, the expert provided no evidence that the plaintiff could have

obtained one of these open positions. *Id.* ("Accordingly, Beverage Distributors offered no evidence that a suitable position was available.") In *E.E.O.C. v. W. Trading Co., Inc.*, 291 F.R.D. 615, 620 (D. Colo. 2013) Judge Martinez granted a Rule 50 motion because defendant failed to prove that a comparable position existed, holding, "[t]he only evidence presented at trial regarding other potential jobs that Mr. Riley could have performed during the relevant backpay period was the temporary job cleaning stadiums, which the Court has found was not comparable to Mr. Riley's job with Defendant. Therefore, the Court concludes as a matter of law, that Defendant failed to present sufficient evidence to support the jury's reduction of the backpay damages award."

The same result was reached in *Goodman v. Fort Howard Corp.*, 1994 U.S. App. LEXIS 17507 (10th Cir. July 18, 1994) (order and judgment) where the 10th Circuit concluded, "[i]n the instant case, Defendant failed to produce any evidence indicating that there existed suitable positions which Plaintiff could have discovered and for which he was qualified. Consequently, Defendant did not meet its burden of showing that Plaintiff failed to mitigate damages. Given this failure of proof, Plaintiff's status as a full-time student is irrelevant." *See also McClure v. Indep. Sch. Dist. No. 16*, 228 F.3d 1205, 1214 (10th Cir. 2000) (employer must show positions are available); *Sandia Corp.,* 639 F.2d at 627 (employer did not submit any evidence indicating that other comparable positions were available to claimants). Other courts have explained the defendant's obligation to identify actual job openings prior to the close of discovery. For example, in *Buckingham v. Booz Allen Hamilton, Inc.*, 64 F. Supp. 3d 981, 985-87 (S.D. Tex. 2014) the District Court granted summary judgment for plaintiff on the defendant's failure to mitigate

affirmative defense because the defendant failed to disclose evidence of available positions in compliance with Rule 26 prior to the end of discovery.

      B.     DEFENDANT CANNOT ESTABLISH THAT THERE WERE SUITABLE POSITIONS AVAILBLE.

Here, none of the witnesses disclosed in Denver Water's 26(a)(1) disclosures are identified to provide testimony on the first element of the affirmative defense, the availability of suitable positions. Moreover, Defendant made no expert disclosures pursuant to Fed.R.Civ.P 26(a)(2). And as the 10th Circuit held in *Aguinaga v. United Food and Commercial Workers Int'l Union*, 993 F.2d 1463, 1474 (10th Cir. 1993), *cert. denied,* 114 S.Ct. 880 (1994), where a defendant fails to establish the first prong, i.e., that suitable positions were available, it has failed its burden of proof and "evidence that supports the second prong of the test – i.e., the individual mitigation efforts of Plaintiffs – are simply irrelevant." *Aguinaga*, 993 F.2d at 1474.

Presumably when Denver Water asserted this affirmative defense in its Answer it did so in compliance with Rule 11 and had a good faith belief that it could produce evidence in support of its affirmative defense, and if not, to withdraw the defense. Rule 11 requires it. Thus, it was incumbent upon Denver Water to disclose the identity of any witnesses that could provide testimony in support of its affirmative defense in accordance with the federal rules. Likely due to an abundance of confidence that it would prevail in the liability phase of the trial, Denver Water abandoned its affirmative defense by its failure to disclose any witnesses or evidence prior to the end of discovery or any time thereafter.

Moreover, neither the Scheduling Order nor any other Order of the Court bifurcated the discovery or disclosure requirements allowing Denver Water to ignore its obligations under the federal rules and to disclose witnesses at some time more convenient to it. Now, over two years

after asserting the affirmative defense, Denver Water has utterly failed in its obligation to disclose sufficient evidence or a witness to testify about the availability of jobs necessary to establish the first element of its affirmative defense. The witness disclosure requirements would be rendered meaningless if a party could ignore them and then claim that the nondisclosure could be cured at some later date.

As previously indicated, the Court was swift to exclude a witness that Plaintiff attempted to have testify at trial, holding that, "[b]ecause Plaintiff did not disclose Mr. Pasillas in a way that complied with his Rule 26(a) and (e) obligations, he may not use him as a witness at the trial." (Dkt. # 112, pg. 2.) Accordingly, Denver Water cannot establish a legally sufficient evidentiary basis to prevail on the defense and the Court should hold as a matter of law that Denver Water cannot meet its burden of proof on the first element of its failure to mitigate affirmative defense because it has not disclosed any witnesses or testimony in support of the defense. The Court should therefore grant partial summary judgment in Mr. Tygrett's favor.

WHEREFORE, Plaintiff respectfully requests that this Court enter an order granting partial summary judgment in his favor and against Denver Water with respect to Denver Water's failure to mitigate affirmative defense.

Respectfully submitted this 16th day of August, 2021.

                                          s/Jennifer Robinson
                                          Jennifer Robinson
                                          Robinson & Associates Law Office, LLC
                                          7900 E. Union Ave., Suite 1100
                                          Denver, CO 80237
                                          jrobinson@raemployment.com
                                          (303) 872-3063: *Counsel for Plaintiff*

**CERTIFICATE OF SERVICE (CM/ECF)**

I HEREBY CERTIFY that on the 16th day of August, 2021, a true and correct copy of the foregoing was served via ECF on all counsel of record.

/s/ *Jennifer Robinson*